LYNNE C. HERMLE (STATE BAR NO. 99779)
lchermle@orrick.com
JOSEPH C. LIBURT (STATE BAR NO. 155507)
jliburt@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:     650-614-7400
Facsimile:     650-614-7401

Attorneys for Defendant
PRICEWATERHOUSECOOPERS LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAC ANH LE, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>PRICEWATERHOUSECOOPERS LLP; and DOES 1 through 10, inclusive,<br><br>    Defendant. | Case No. C07-05476 MMC<br><br>**RESPONSE BY DEFENDANT PRICEWATERHOUSECOOPERS LLP TO ORDER TO SHOW CAUSE WHY ACTION SHOULD NOT BE TRANSFERRED TO EASTERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a)** |

1

# TABLE OF CONTENTS

2

Page

3    I.    INTRODUCTION ....................................................................................................- 1 -

4    II.    ARGUMENTS .......................................................................................................- 2 -

5        A.    The Court Should Not Transfer The Instant Action To The Eastern District
             of California In The Interests Of Justice .........................................................- 2 -

6            1.    The Sacramento Office in the Eastern District is Relatively Small in
                  Size and Practice Compared to the San Francisco and San Jose
7                 Offices in the Northern District ............................................................- 2 -

8            2.    The Northern District has More Interest in the Instant Action Than
                  the Eastern District................................................................................- 3 -

9            3.    A Transfer Will Significantly Burden PwC and Potential Witnesses......- 3 -

10           4.    Transfer of the Case Will Unfairly Reward the *Campbell* Plaintiffs'
                  Forum Shopping.....................................................................................- 4 -

11       B.    Staying The Instant Action Under The First-to-File Rule Is A Proper And
             Desirable Option ...........................................................................................- 4 -

12           1.    The First-to-File Rule is Applicable Because the Proposed Class,
                  Not the Class Representative, is Considered..........................................- 5 -

13           2.    Other Cases in the Northern District of California Show that a Stay
                  of *Le* Under This Situation is Warranted Under the First-to-File
14                Rule .......................................................................................................- 5 -

15       C.    A Stay Of *Le* Is More Appropriate Than Transfer To The Eastern District
             Of California ................................................................................................- 8 -

16           1.    Staying the Instant Action Will Better Accomplish the Same Goals
                  That Would Be Served By a Transfer.....................................................- 8 -

17           2.    At a Minimum, the Court Should Not Transfer the Instant Action
                  Until a Decision on Class Certification is Made in *Campbell* ..............- 10 -

18   III.    CONCLUSION .....................................................................................................- 10 -

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Alltrade, Inc.* v. *Uniweld Products, Inc.*,
  946 F.2d 622 (9th Cir. 1991)................................................................................... 5

*Persepolis Enterprise* v. *United Parcel Service, Inc.*,
  2007 U.S. Dist. LEXIS 68699 (N.D. Cal. Sept. 7, 2007) ........................................ 5

*Weinstein* v. *Metlife, Inc.*,
  2006 U.S. Dist. LEXIS 83115 (N.D. Cal. Nov. 6, 2006)............................................ 5, 6, 7, 8

## DOCKETED CASES

*Campbell v. PricewaterhouseCoopers, LLP*,
  No. 06-CV-02376-LKK-GGH ................................................................................ 1

## OTHER AUTHORITIES

15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3854
  (1986) ....................................................................................................................... 2

1    **I.    <u>INTRODUCTION</u>**

2    Defendant PricewaterhouseCoopers LLP ("PwC") submits this memorandum in response

3    to the Court's Order Denying in Part and Deferring in Part Ruling on Defendant's Motion;

4    Directing Parties to Show Cause Why Action Should Not Be Transferred to Eastern District of

5    California Pursuant to 28 U.S.C. § 1404(a); Continuing Case Management Conference (the

6    "Order"), dated March 4, 2008.

7    The Court should not transfer the instant action to the Eastern District of California in the

8    interests of justice.  It is not in the interests of justice for the case to be transferred to a district in

9    which PwC only has one relatively small office, with a much more limited practice, when there

10   are two significantly larger offices with more key witnesses and documents in the Northern

11   District (where Plaintiff worked).    Moreover, transferring the case to the Eastern District allows

12   Plaintiff to take advantage of the *Campbell* plaintiffs' forum shopping.

13   Further, a stay of the California state law claims in the instant action pending resolution of

14   *Campbell v. PricewaterhouseCoopers, LLP*, Case No. 06-CV-02376-LKK-GGH ("*Campbell*") is

15   a more appropriate method of satisfying the Court's goals than a transfer of the case to the

16   Eastern District of California.  With respect to the Court's Order finding that a stay is not

17   warranted under the first-to-file rule, PwC respectfully asserts that a stay is not only a valid legal

18   option (as evidenced by recent decisions from the Northern District of California discussed

19   below), but also the most appropriate mechanism for promoting judicial economy and avoiding

20   the potential for conflicting judgments.  *Campbell* is a first-filed case that involves the same

21   California class (as best as PwC can determine based on Plaintiff's ambiguous class definition)

22   and the same California state law claims.  Thus, the Court should stay the California state law

23   claims in the instant action pending resolution of *Campbell*.  A stay will accomplish the same

24   goals of promoting judicial economy and avoiding potential conflicting judgments, without

25   creating additional hardships on the parties, like those that would result from a transfer.

26   Alternatively, this Court can properly stay the California state law claims in this action until the

27   *Campbell* court rules on the pending motion for class certification in that court (which has been

28   briefed, argued and submitted), at which point this Court may be in a better position to determine

1    the appropriate course of action here.

2    **II.    ARGUMENTS**

3          **A.    The Court Should Not Transfer The Instant Action To The Eastern District
              of California In The Interests Of Justice**

4

5          The "interests of justice" consideration is the most important factor a court must consider,

6    and may be decisive when looking at whether to transfer a case, even when all other factors point

7    the other way.  15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* §

8    3854 (1986).  In the present situation, a transfer to the Eastern District of California will not serve

9    the interests of justice nearly as well as a stay.  Transferring this action to the Eastern District will

10   inconvenience witnesses and hinder access to evidence, as well as move the action away from the

11   district that contains the most natural and relevant connection with this case.

12          **1.    The Sacramento Office in the Eastern District is Relatively Small in
                 Size and Practice Compared to the San Francisco and San Jose Offices
                 in the Northern District**

13

14         PwC currently operates six offices in the State of California (Sacramento, San Francisco,

15   San Jose, Los Angeles, Irvine and San Diego).  Declaration of Janet Scott in Support of

16   Defendant PricewaterhouseCoopers LLP's Response to Order to Show Cause Why Action Should

17   Not Be Transferred to Eastern District of California Pursuant to 28 U.S.C. § 1404(a) ("Scott

18   Decl."), ¶ 4.  The Sacramento office is the only office located in the Eastern District, and the San

19   Francisco and San Jose offices are located in the Northern District.  PwC's offices vary greatly in

20   size.  Offices such as San Francisco and San Jose are fairly large, each having over 1000 people

21   assigned to them.  *Id.*  In contrast, the Sacramento office is much smaller, with a headcount of

22   less than 100.  *Id.*  There are also more than 1,000 people assigned to PwC's Southern California

23   offices.  *Id.*

24         Further, PwC is divided into three client lines of service ("LOS") – Advisory, Assurance

25   and Tax.  *Id.*, ¶ 3.  Each LOS is composed of multiple business units that focus on specialized

26   professional service offerings, and these LOS cross over numerous industries.  *Id.*  However, not

27   all business units of all lines of service are present in the Sacramento office.  *Id.*, ¶ 5.

28         Here, the Court is considering a transfer from the district in which PwC has two of its

PRICEWATERHOUSECOOPER LLP'S RESPONSE TO
ORDER TO SHOW CAUSE WHY ACTION SHOULD
NOT BE TRANSFERRED (C07-05476 MMC)

1   largest California offices, all LOS and many business units, to a district where PwC only has one

2   significantly smaller office containing significantly fewer business units. The interests of justice

3   would be better served by staying this action than by transferring this case from a district where a

4   large number of people directly involved with this case live and work, to another district where

5   only a small minority of employees reside.

6          2.      **The Northern District has More Interest in the Instant Action Than
7                  the Eastern District**

8          First, the Northern District has a strong interest in litigating this case because Plaintiff

9   lives and worked for PwC in this District, and the alleged employment violations relating to

10  Plaintiff—the only ones at issue currently--occurred in this District. Second, this District has

11  more interest in the instant action than the Eastern District because, presumably, more employees

12  encompassed by the proposed class and claims reside and work in this District given the larger

13  size of the PwC offices here (although determining exactly who will be encompassed in

14  Plaintiff's proposed class is impossible because of Plaintiff's ambiguous proposed class

15  definition). Finally, this District has an interest in supervising the proceedings in the instant

16  action because many witnesses who may be involved with the litigation live and work in this

17  District. Thus, this District is the most appropriate district to determine the procedures and

18  control the process that the witnesses will have to face throughout the litigation.

19         3.      **A Transfer Will Significantly Burden PwC and Potential Witnesses**

20         Transferring this case to the Eastern District of California will result in significant burden

21  for PwC and the various witnesses. Plaintiff worked for PwC in the San Jose office in the job

22  title of "Associate" in the attest practice of the Assurance LOS. *Id.*, ¶ 6. That office has a vastly

23  larger headcount than the Sacramento office (more than 1,000 vs. less than 100). *Id.*, ¶ 4. Many

24  individuals who have personal knowledge about Plaintiff and the circumstances of her hiring, her

25  work and her departure from PwC are resident in the San Jose office. *Id.*, ¶ 7. Additionally, the

26  Sacramento office does not have the scope of business unit representation that are present in the

27  San Francisco and San Jose offices. *Id.* Thus, most witnesses for the case will not come from the

28  Sacramento office, but from the much larger San Francisco and San Jose offices. *Id.*

Requiring the majority of PwC's witnesses to travel to Sacramento for deposition or trial is a burden and will impact business. *Id.* Even if a deposition or other proceeding does not last an entire day, the travel time to/from Sacramento requires these employees to miss full days of work. *Id.* Significant compliance deadlines (*e.g.*, SEC filings, IRS filings) occur for PwC's clients during the first few months of the year. *Id.* Thus, the busy season and the government-set deadlines driving work projects cannot be adjusted to accommodate litigation. *Id.* If witnesses are called out of work from the San Francisco and San Jose offices to miss a full day of work during the busy season, their projects may well be negatively impacted. *Id.* Given the locations of the California offices, the fact that most witnesses will be in San Francisco and San Jose, and that Plaintiff herself was from San Jose, it is more reasonable and convenient to keep the case in the SF Bay Area.

**4.    Transfer of the Case Will Unfairly Reward the *Campbell* Plaintiffs' Forum Shopping**

On October 27, 2006, Plaintiffs Jason Campbell and Sarah Sobek each filed an individual breach of contract lawsuit; Sobek in the Northern District of California and Campbell in the Eastern District of California. After concluding that the Eastern District would be more receptive to their allegations, Sobek dismissed without prejudice her complaint in the Northern District and joined Campbell in his lawsuit. Thus, if the *Campbell* plaintiffs had not engage in forum shopping, *Campbell* and its claims could have been resolved in the Northern District of California. A transfer of this case to the Eastern District would therefore not be in the interests of justice because it only serves to reward subsequent plaintiffs by allowing them to benefit from the *Campbell* plaintiffs' deliberate forum shopping. The Court should seek to deter forum shopping; instead, a transfer reinforces this behavior and enables others to take advantage.

**B.    Staying The Instant Action Under The First-to-File Rule Is A Proper And Desirable Option**

While a transfer may help in avoiding duplicative litigation and limiting waste of time and resources, a stay can more efficiently satisfy these same interests, without causing the hardship previously described. Therefore, PwC asks that the Court grant a stay in lieu of a transfer of the

1    instant action.

2        1.    **The First-to-File Rule is Applicable Because the Proposed Class, Not the Class Representative, is Considered**

3

4        One factor in considering whether to apply the first-to-file rule is a comparison of the

5    similarities of the parties. *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir.

6    1991). This Court previously found that a stay under the first-to-file rule is unwarranted because

7    a class has not yet been certified in either *Campbell* or *Le* and therefore the parties in *Campbell*

8    and *Le* are not the same. Order, 2:22-24; 3:1-2. However, in a class action, the Court must

9    compare the proposed class, not the class representatives, in its analysis of the first-to-file rule.

10   *Weinstein v. Metlife, Inc.*, No. C-06-04444 SI, 2006 U.S. Dist. LEXIS 83115, *12 (N.D. Cal.

11   Nov. 6, 2006) ("In a class action, however, it is the class, not the representative, that is

12   compared."); *Persepolis Enterprise v. United Parcel Service, Inc.*, No. C-07-02379 SC, 2007 U.S.

13   Dist. LEXIS 68699, *6 (N.D. Cal. Sept. 7, 2007) ("The first-to-file rule requires the court in a

14   class action suit to compare the proposed classes, not their representatives."). Since the first-to-

15   file rule is applicable to this case, PwC respectfully requests that the Court reconsiders PwC's

16   arguments for a stay under the first-to-file rule, as set forth in its motion for a stay and in this

17   memorandum, instead of a transfer to the Eastern District of California.

18       2.    **Other Cases in the Northern District of California Show that a Stay of *Le* Under This Situation is Warranted Under the First-to-File Rule**

19

20       In deciding whether to invoke the first-to-file rule, courts consider three factors: (1) the

21   chronology of the actions; (2) the identity of the parties involved; and (3) the similarity of the

22   issues at stake. *Alltrade*, 946 F.2d at 625. As previously explained by PwC in its motion for a

23   stay, and essentially undisputed by Plaintiff, the chronology of the actions and the amount of

24   progress made in *Campbell* clearly weigh in favor of staying the instant action in deference to the

25   first filed *Campbell* case. Further, Plaintiff's proposed California classes and California state law

26   claims are very similar, if not identical, to the purported class and claims in *Campbell*.[1]

27

28   ---
[1] Plaintiff's proposed class definition contains significant ambiguities, but as far as PwC can guess, Plaintiff seems to be seeking to certify a class that significantly overlaps the proposed class in *Campbell*.

1   The recent *Weinstein* decision in the Northern District of California is on point with the

2   instant action, and shows that a stay of *Le* is appropriate under the first-to-file rule.  In *Weinstein*,

3   the court granted the defendant's motion to stay plaintiff's third cause of action under the first-to-

4   file rule.  *Weinstein*, 2006 U.S. Dist. LEXIS 83115 at *14-15.  Weinstein's third cause of action

5   alleged failure to reimburse expenses in violation of California Labor Code § 2802(a) on behalf of

6   plaintiff and his proposed California class.  Plaintiff Weinstein brought his action individually

7   and on behalf of all persons similarly situated, and his complaint set forth eight causes of action.

8   Weinstein alleged a Fair Labor Standards Act ("FLSA") claim on behalf of a nationwide class

9   and seven other claims under California law on behalf of a California class.

10      Weinstein filed his complaint on July 20, 2006.  However, back on June 14, 2005,

11  plaintiff Sims had filed an action individually and on behalf of all those similarly situated in

12  California state court, and Sims' action was subsequently removed to the Northern District of

13  California.  The *Sims* case alleged two causes of action:  (1) violation of California Labor Code §

14  2802; and (2) injunctive relief and restitution under California Business and Professions Code §

15  17200, *et seq*.  The *Sims* case was substantially further along than *Weinstein*, depositions of the

16  named plaintiffs and some of defendants' representatives had been conducted, and thousands of

17  pages of documents had been produced.  *Weinstein*, 2006 U.S. Dist. LEXIS 83115 at *9.  In

18  addition, the parties in *Sims* had already fully briefed a summary judgment motion and a motion

19  for class certification, which was pending before the *Sims* court at the time the motion to stay was

20  brought before the *Weinstein* court.

21      *Weinstein* and its relationship with *Sims* directly parallels the instant action and its

22  relationship with *Campbell*.  Here, Plaintiff Le filed her Complaint on October 26, 2007 alleging

23  violation of the FLSA on behalf of a proposed nationwide class, and asserting six additional

24  claims under California state law on behalf of her proposed California classes.  However, Plaintiff

25  Campbell filed his original complaint on October 27, 2006, alleging the same claims based on

26  California state law on behalf of the same proposed class (as best PwC can determine based on

27  Le's ambiguous class definition).  Similar to the situation the court faced in *Weinstein*, significant

28  discovery has already been conducted in the first-filed *Campbell* case, and a motion for class

certification is pending.[2]  And like defendants in *Weinstein*, PwC now asks the Court to stay the overlapping California state law claims in the later-filed *Le* case pending resolution of the first-filed *Campbell* case.

First, in assessing whether the parties are similar, the *Weinstein* court looked at the proposed class of each action.  *Id.* at *12.  The court found that there were no significant differences between the parties.  *Id.*  Thus, this factor favored a stay.  Similarly, as explained by PwC in its motion for a stay, Plaintiff's proposed California classes – as best as PwC can guess – seem to be very similar, if not identical, to the purported class in *Campbell*.  PwC's showing of these similarities are largely undisputed by Plaintiff.[3]  Therefore, this factor should also favor a stay of the instant action here.

Second, the *Weinstein* court looked at whether the *Weinstein* action was different from the *Sims* action.  *Id.* at *12-13.  The court explicitly rejected plaintiff Weinstein's argument that his action is different as a whole because it is broader, since it also includes a nationwide FLSA class. *Id.*  The court found the argument unpersuasive, noting that the cause of action in dispute is brought only on behalf of a proposed California class.  *Id.*  Plaintiff Le in the instant action makes the very same argument that the *Weinstein* court rejected, and this Court should also reject this argument.  *See* Pl.'s Opp., 6:16-17, 21-22.  Since PwC's motion for a stay only concerns Plaintiff's California state law claims, it is clear from *Weinstein* that arguments claiming *Le* is a broader action as a whole, or that *Le* includes an additional FLSA claim alleged on behalf of a nationwide class, have no bearing on PwC's motion for a stay.  Further, contrary to Plaintiff's assertions, a court can stay certain claims that overlap a first-filed action and leave others to proceed.  *See* Pl.'s Opp., 7:1-16; *Weinstein*, 2006 U.S. Dist. LEXIS 83115 at *15 ("This stay applies only to the third cause of action; proceedings may continue normally as to the other claims.").

---

[2] The motion for class certification in *Campbell* was argued on February 25, 2008, and the parties are awaiting Judge Karlton's decision.

[3] To the extent that Plaintiff disputes that the proposed California classes are the same, the burden is on Plaintiff to explain precisely how they aren't the same.  PwC moved to strike the class definition as unascertainable in order to force Plaintiff to clarify the precise scope of this action, not only for purposes of litigating this action (*e.g.*, scope of discovery), but also to enable this Court to make an informed decision on a stay (or transfer) of this action.

1    Finally, as this Court has found, the issues in both *Campbell* and *Le* are similar: "the legal

2    claims alleged in the instant action and those alleged in the *Campbell* action present the same

3    underlying issue, specifically, the propriety of defendant's classification of Associates as exempt

4    from overtime[.]"  Order, 3:16-18.  To the extent there are any differences in the claims, there is

5    still a significant overlap; in this situation, it is in the interests of judicial economy and for

6    avoidance of inconsistent rulings to stay Plaintiff's California state law claims until the issues in

7    the first-filed *Campbell* case are resolved.  *See Weinstein*, 2006 U.S. Dist. LEXIS 83115 at *13.

8    For all of these reasons, a stay of *Le* is appropriate and this Court should follow *Weinstein*

9    and stay the instant action as to the California state law claims under the first-to-file rule, pending

10   resolution of the *Campbell* case.  A stay will benefit the Court and all parties, as the resolution of

11   the *Campbell* case may narrow the issues that would need to be litigated here.

12   **C.    A Transfer Of *Le* To The Eastern District Of California Is Less Appropriate
            Than A Stay**

13

14   Even if the Court finds that the first-to-file rule is inapplicable in this situation, a transfer

15   to the Eastern District of California is less appropriate than a stay of Plaintiff's California state

16   law claims.  Staying the instant action as to these claims will accomplish the same goals as a

17   transfer of resolving the Court's concerns about judicial economy and avoidance of possible

18   conflicting judgments, without creating additional waste of judicial resources and hardship on the

19   parties.

20   **1.    Staying the Instant Action Will Better Accomplish the Same Goals
            That Would Be Served By a Transfer**

21

22   In considering a transfer of the instant action, this Court presumably seeks to conserve

23   judicial resources and avoid the potential for conflicting decisions.  Both of these goals can be

24   accomplished efficiently and effectively through a stay of the California state law claims in the

25   instant action instead of a transfer.

26   First, a stay will conserve judicial resources because it prevents duplicative motions and

27   discovery.  By staying the California state law claims in this action and waiting until the

28   resolution of *Campbell* (or at least until key issues, such as class certification, are resolved), the

PRICEWATERHOUSECOOPER LLP'S RESPONSE TO
ORDER TO SHOW CAUSE WHY ACTION SHOULD
NOT BE TRANSFERRED (C07-05476 MMC)

1    Court will not only be in a better position to make crucial decisions relevant to the case because it

2    will have additional information from *Campbell*, but will potentially avoid unnecessary motions

3    and discovery, since *Campbell* may resolve some issues that will be presented before this Court.

4    Staying this action is also preferable to a transfer.  With a stay, this Court decides to wait until an

5    identical case that has progressed further resolves the same issues that the Court will undoubtedly

6    face in the instant case, before taking any action.  The Eastern District is not inconvenienced, and

7    this Court conserves its resources.  With a transfer, the Court takes action before knowing if the

8    action is even necessary.

9        Second, a stay will help the Court to avoid conflicting decisions on identical issues.  Since

10    both actions will not proceed simultaneously and the further progressed *Campbell* case will be

11    tackling identical issues this Court will eventually face, this Court will benefit from any potential

12    collateral estoppel or res judicata effect *Campbell* may have on the instant action.  Thus, there

13    will not be a risk of any inconsistent decisions by this Court on identical issues, and  a stay will

14    further the Court's goals.

15        While a transfer can have some of the same benefits as a stay, transfer of this action will

16    also result in prejudice and inconvenience to both parties as well as nonparties.  Plaintiff Le

17    worked in San Jose, and a transfer to Sacramento will inconvenience witnesses on both sides.

18    Also, the interests of persons who are not parties to this litigation are better protected by the

19    issuance of a stay.  With a transfer, nonparty witnesses will have to travel and participate in the

20    action in a less convenient forum, which will cause hardships on both the witnesses and on PwC.

21    Thus, a stay of the instant action will better accomplish the Court's goals than a transfer.

22        Moreover, there is no apparent prejudice to Plaintiff in staying the instant California

23    proposed class action, because it will not affect her ability to fully litigate her individual claims,

24    or her ability to pursue the proposed FLSA collective action.  Indeed, since *Campbell* will directly

25    impact the California claims in this case, it is in the interest of the parties and this Court to stay

26    the California claims in the instant action, especially pending decisions on issues of class

27    certification.  A transfer of this case to the Eastern District at this time could throw the *Campbell*

28    case into procedural chaos.

PRICEWATERHOUSECOOPER LLP'S RESPONSE TO
ORDER TO SHOW CAUSE WHY ACTION SHOULD
NOT BE TRANSFERRED (C07-05476 MMC)

1

**2.      At a Minimum, the Court Should Not Transfer the Instant Action
Until a Decision on Class Certification is Made in *Campbell***

2

3     If this Court still believes it is in the interests of justice to transfer the instant action to the

4     Eastern District of California, then at a minimum, the Court should wait until a decision on class

5     certification is made in *Campbell*.  The motion for class certification in *Campbell* was argued on

6     February 25, 2008, and the parties are awaiting Judge Karlton's decision.  There is no harm or

7     prejudice to either party, or any waste of resources for this Court, if a short stay is granted

8     pending the class certification decision.  Further, it is prudent to slightly delay any transfer to

9     await this decision because it may be relevant to unresolved issues regarding the similarity of the

10    proposed class, possibility of consolidation, or other issues relating to the propriety of a transfer.

11    Thus, even if the Court remains inclined to transfer this action, it is more beneficial to at least

12    wait until Judge Karlton makes his class certification decision in *Campbell*.

13    **III.    CONCLUSION**

14    For all of these reasons, PwC respectfully requests that the Court stay the California state

15    law claims in the instant action pending resolution of the *Campbell* case, or at a minimum

16    pending the decision on class certification, instead of transferring the case to the Eastern District

17    of California.

18

19    Dated: March 24, 2008

20                                                        LYNNE C. HERMLE
                                                          JOSEPH C. LIBURT
                                                          ORRICK, HERRINGTON & SUTCLIFFE LLP

21

22
                                                              _____/s/_____
23                                                        JOSEPH C. LIBURT
                                                          Attorneys for Defendant
24                                                        PRICEWATERHOUSECOOPERS LLP

25

26

27

28

OHS West:260405761.3                        - 10 -